**Norton D. WALTUCH, Plaintiff,**

v.

**CONTICOMMODITY SERVICES, INC. and Continental Grain Company, Defendants.**

**No. 92 Civ. 0383(MEL).**

United States District Court, S.D. New York.

Sept. 17, 1993.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Steven J. Glassman, Linda K. Williams, of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Richard A. Rosen, Arthur L. Liman and Beth F. Levine, of counsel), for defendants.

LASKER, District Judge.

Norton Waltuch brings this action for indemnification of $2,346,586.67 in legal expenses and related cost against his former employer, ContiCommodity Services, Inc. ("Conti") and its parent corporation, Continental Grain Company ("Conti Grain"). All these costs arose out of litigation in connection with Waltuch's activities in the silver market as an employee of Conti in 1979–80. Waltuch's indemnity claims are based on provisions of Conti's Certificate of Incorporation and by-laws as well as Delaware General Corporation Law.

After the last of the underlying actions had been settled, Waltuch presented his indemnification claim to Conti and Conti Grain. In accordance with Conti's by-laws and Delaware General Corporation Law, Conti Grain, as the sole shareholder of Conti, undertook responsibility for determining Waltuch's eligibility for indemnification. Conti Grain ap-

pointed a three-member ad hoc Special Committee and the Special Committee retained independent legal counsel to advise it. On November 19, 1991 the Special Committee, having reviewed voluminous written submissions by the parties, issued a detailed report in which it concluded that Waltuch was not entitled to indemnification. Conti Grain's Board of Directors adopted the report and its conclusion.

Approximately two months later, Waltuch commenced this action. Waltuch now moves for summary judgment on his claim against Conti under Article Ninth of the Certificate of Incorporation and Section 42(c) of Conti's by-laws (Counts I and III). Conti has cross-moved for summary judgment dismissing the complaint in its entirety and for summary judgment on its second counterclaim seeking recoupment of $1,100,864.48 advanced to Waltuch to pay his legal fees. In addition, Conti Grain moves for an order dismissing the complaint for failure to state a cause of action against it.

The motions are disposed of as follows. Waltuch's motion for summary judgment is granted with respect to the expenses actually and reasonably incurred by him in defending the *Michelson* action and otherwise denied. Conti's motion for summary judgment is granted with respect to Waltuch's claim under Section 42(c) of Conti's by-laws with the exception of the *Michelson* expenses, granted with regard to Waltuch's claim for punitive damages, and otherwise denied. Conti Grain's motion to dismiss the complaint for failure to state a cause of action against it is denied as to Counts II, IV and VI of the complaint and, as to Count VII, shall be treated as a motion for summary judgment as detailed in Section VII.

### I.

Conti's first line of defense is that the Special Committee's decision not to indemnify Waltuch is protected by the business judgment rule and that the merits of its conclusion are therefore immune from *de novo* review by a court. Conti maintains that decisions regarding indemnification are analogous to other corporate decisions which have been held to be protected by the business judgment rule, such as a decision to refuse a shareholder demand to commence litigation. Conti also points out that the Delaware indemnification statute in some cases requires the corporation itself to determine whether the indemnitee has met the applicable standard of conduct for indemnification "unless ordered by a court." It argues that there would be little point to this procedure if the corporation's findings could subsequently be entirely disregarded by disgruntled claimants.

Waltuch responds that the business judgment rule is intended to protect directors against shareholder suits challenging their business decisions. He argues that the Special Committee's decision not to indemnify Waltuch was not a business decision and points out that, in any event, Waltuch's suit is not a shareholder action.

The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). Where the rule applies, the directors' decisions "will not be disturbed if they can be attributed to any rational business purpose. A court under such circumstances will not substitute its own notions of what is or is not sound business judgment." *Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del.1971).

Conti points out that, in the case of shareholder suits, Delaware courts have held decisions by corporate directors declining to sue officers and directors for breaches of fiduciary duty, to be protected by the business judgment rule. *Zapata Corp. v. Maldonado,* 430 A.2d 779, 784 n. 10 (Del.1981); *Accord Allison v. General Motors Corp.,* 604 F.Supp. 1106, 1120 (D.Del.), *aff'd mem.,* 782 F.2d 1026 (3d Cir.1985). However, this is not such a case.

Plaintiff here is not a shareholder and the question is not whether the corporation should sue an officer or director. The business judgment rule therefore does not apply.

The business judgment rule is a specific application of [the] directorial standard of

conduct to the situation where, after reasonable investigation, disinterested directors adopt a course of action which, in good faith they honestly believe will benefit the corporation. *Should the directors be sued by shareholders because of their decision,* the court—at least in theory—will not second-guess the merits of the decision.

Dennis J. Block et al., *The Business Judgment Rule: Fiduciary Duties of Corporate Directors and Officers* 2–3 (2d ed. 1988) (emphasis added). "Although it is customary to think of the business judgment rule as protecting directors from stockholders, it ultimately serves the more important function of protecting stockholders from themselves." Dooley & Veasey, *supra,* at 522. The business judgment rule recognizes that "stockholders give the directors a mandate to oversee the countless business decisions which must be made daily in the course of managing an enterprise." E. Norman Veasey & William F. Mongan, *Fiduciary Duties of Directors in Control Contests,* 592 PLI/Corp. 449, 460 (Jan. 11, 1988). The rule prevents the shareholders from meddling in these decisions because they have delegated responsibility for the day to day business of running the corporation to the directors.

Conti cites to *Gehrhardt v. General Motors,* 581 F.2d 7 (2d Cir.1978), and *Gitelson v. Du Pont,* 17 N.Y.2d 46, 215 N.E.2d 336, 268 N.Y.S.2d 11 (1966), as examples of cases in which the business judgment rule has supposedly been applied in a "broader arena of corporate affairs." These cases do not mention the business judgment rule. Instead, they concern contractual provisions specifying that the corporation has the sole authority to determine certain employment related matters.

Whatever merit there may be to Conti's policy argument—that there is little point to corporate indemnity decisions pursuant to the Delaware statute if these determinations are not accepted by a court—it does not change the scope of the business judgment rule.

Since the business judgment rule does not apply to the Special Committee's rejection of Waltuch's indemnification claim, the merits of that determination must be examined *de novo.*

## II.

■ Count I of the complaint sets forth Waltuch's indemnification claim against Conti under Article Ninth of Conti's Certificate of Incorporation. Article Ninth provides:

> The Corporation shall indemnify and hold harmless each of its incumbent or former directors, officers, employees and agents . . . against expenses actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding threatened, pending or completed, in which he is made a party, by reason of his serving in or having held such position or capacity, except in relation to matters as to which he shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty.

The Special Committee denied the claim on the grounds that indemnification would violate the public policy limitations expressed in Section 145 of the Delaware General Corporation Law. Both Conti and Waltuch move for summary judgment.

There is no dispute that Article Ninth is facially satisfied since Waltuch has not been "adjudged . . . liable for negligence or misconduct in the performance of duty." Nevertheless, Conti argues that Article Ninth cannot be enforced as literally written because to do so would violate Section 145 of the Delaware General Corporation Law which requires a person seeking indemnification to show that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the corporation's best interests. Conti contends that Waltuch cannot meet that burden and accordingly is not entitled to indemnification.

Waltuch disputes both Conti's legal theory and its version of the facts. He points out that he has satisfied the literal terms of Article Ninth and argues that this should "end the matter." Waltuch also maintains that, even if this does not end the matter, subsection (f) of Section 145 of the Delaware General Corporation Law, the so-called "non-

exclusive" clause, permits indemnification pursuant to Article Ninth of Conti's Charter and that he therefore need not make any additional showing to be indemnified under Article Ninth. Finally, Waltuch argues that, in any event, he did act in good faith and so should recover his legal expenses.

Article Ninth, by itself, does not "end the matter." Conti's Certificate of Incorporation is subject to the law of Delaware. Section 102(b)(1) of the Delaware General Corporation law specifically provides that a certificate of incorporation may include "[a]ny provision for the management of the business and conduct of the affairs of the corporation ... if such provisions are not contrary to the laws of this State." Del.Gen.Corp.L. § 102(b)(1). Accordingly, Waltuch cannot recover under Article Ninth unless he can also satisfy the requirements of Section 145 of the Delaware General Corporation Law.

Section 145 is the statutory authority for indemnification. It applies to any person involved in actual or threatened litigation or an investigation by reason of the status of such a person as an officer, director, employee or agent of the corporation. Subsections (a) and (b) of the statute permit indemnification by the corporation "against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred" provided that the indemnitee "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation." Subsection (c) mandates indemnification against "expenses (including attorneys' fees) actually and reasonably incurred" if the indemnitee "has been successful on the merits or otherwise in defense of any action suit or proceeding referred to in subsections (a) and (b), or in defense of any claim, issue or matter therein."

These provisions are all critically affected by the language of subsection (f) which provides:

> The indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise.

The dispute between the parties concerns the meaning of subsection (f)—the so-called "non-exclusive" clause. Waltuch argues that subsection (f) provides for indemnification rights beyond those provided elsewhere and that, in any event, Article Ninth satisfies whatever public policy limitations there may be on indemnification under subsection (f).

Conti insists that Delaware public policy does not permit indemnification beyond the limitations set out in the other subsections of Section 145, including the good faith requirement set out in subsection (a). In other words, Conti maintains that Waltuch cannot be indemnified unless he can show that the good faith requirement of subsection (a) is satisfied, even though subsection (f) states that "[t]he indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled."

There is no question that subsection 145(f) allows a corporation to "grant indemnification rights beyond those provided by the [rest of] the statute." *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339 (Del.1983). However, subsection (f) is not a blanket authorization to indemnify directors or officers against all expenses of whatever nature regardless of conduct. S. Samuel Arsht, *Indemnification Under Section 145 of the Delaware General Corporation Law*, 3 Del.J.Corp.L. 176, 176–77 (1978). Although one court has described the other subsections of Section 145 as "simply 'fall back' provisions which a Delaware corporation may or may not adopt," *PepsiCo, Inc. v. Continental Casualty Co.*, 640 F.Supp. 656, 661 (S.D.N.Y.1986), other courts and commentators agree that "[i]t is questionable whether a Delaware court would be quite this sweeping in its language in a case properly presented to it involving the outer limits of the authority provided in Section 145(f)." R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 4.16, at 4–318 (2d ed. Supp. 1992).

Be that as it may, it has been generally agreed that there are public policy limits on indemnification under Section 145(f). This was already clear under Section 145's prede-

cessor, Delaware Corporation Law § 2(10). *Mooney v. Willys–Overland Motors,* 204 F.2d 888 (3d Cir.1953). In that case, the court found that Mooney was entitled to reimbursement for his legal expenses under an employment contract with the corporation. Chief Judge Biggs noted that the contract provided an independent legal basis for indemnification and that no overriding reference to the Delaware statute was necessary because of that statute's non-exclusive provision. However, he also implied that there were limits on indemnification under the non-exclusive provision, noting that "Delaware Corporation Law § 2(10) and [the corporation's by-law] have met the requirements of public policy by the realistic limits they set upon the right of indemnification." *Id.* at 896.

Similarly, with regard to the present statute, it has been held that "it is generally accepted that an agreement to indemnify within section 145(f), to survive into enforceability, must be able to withstand an attack on grounds of policy or basic equity, that is, a defense amounting to illegality," *Choate, Hall & Stewart v. SCA Servs., Inc.,* 22 Mass.App. Ct. 522, 495 N.E.2d 562, 566 (1986).

*Green v. Westcap Corp.,* 492 A.2d 260 (Del.Super.1985) is also instructive. In that case the plaintiff sought indemnification under section 145(c) for legal expenses incurred successfully defending criminal charges brought against him by the State of Texas. The court stated:

> [T]he objective of the indemnification provision is to assure that indemnification can or will be invoked by the corporation for its directors and officers who incur expenses in proving their honesty and integrity, unless they fail to meet minimum qualifications touching upon the concept of wrongdoing.

*Id.* at 264.

The more difficult question is to define precisely what limitations on indemnification public policy imposes. Waltuch maintains that Article Ninth of Conti's Charter—which requires that the indemnitee has not been adjudged liable for negligence or misconduct in the performance of duty—by itself satisfies Delaware public policy. He relies primarily on *Mooney* in which Delaware Corporation Law § 2(10), which is practically identical to Article Ninth of Conti's charter, was held to satisfy Delaware public policy.

Reliance on *Mooney* is misplaced, however, for the reason that Section 2(10) was replaced by Delaware General Corporation Law Section 145 in 1967 and the new statute no longer explicitly permits indemnification merely because the indemnitee has not been adjudged liable for negligence or misconduct. In fact, the opposite conclusion seems more persuasive: perhaps that provision was changed because the drafters of the new statute concluded that it did not satisfy public policy. An article written at the time gives support to this interpretation of the changes made by the 1967 amendment:

> As far as Delaware law was concerned, the existing statutory provisions on the subject [of indemnification] had been found to be inadequate. Numerous by-laws and charter provisions had been adopted clarifying and extending its terms, but uncertainty existed in many instances as to whether such provisions transgressed the limits which the courts had indicated they would establish based on public policy.

S. Samuel Arsht & Walter K. Stapleton, *Delaware's New General Corporation Law: Substantive Changes,* 23 Bus.Law. 75, 79–80 (1967).

What guidance there is on the precise limits to indemnification imposed by public policy comes from commentators. To the extent that they have addressed the subject, they side with Conti's position. Thus, one commentator has expressly stated that "[a]ny agreement or by-law adopted pursuant to the authority of Section 145(f) would be subject to the public policy limitations reflected by the[ ] specific statutory provisions" of the rest of section 145. Balotti & Finkelstein, *supra,* § 4.16, at 4–320. Another has agreed, albeit more tentatively, that "an argument can be made that indemnification which is uncategorically prohibited under subsections (a) and (b) ... [is] contrary to public policy and hence cannot be the subject of subsection (f) indemnification." A. Gilchrist Sparks, III et al., *Indemnification, Directors*

and Officers Liability Insurance and Limitations of Director Liability Pursuant to Statutory Authorization: The Legal Framework under Delaware Law, 696 PLI/Corp. 941, 976 (May 7, 1990). Finally, one commentator has noted that "[a]lthough there is no case law on point, it is probable that a Delaware court would not allow indemnification … when [i]t is prohibited by law or public policy. To the extent that the statute can be read to embody the public policy limitations of indemnification, a by-law or agreement purporting to expand these limits would likely be void as violative of public policy." E. Norman Veasey et al., Delaware Law Supports Directors with a Three–Legged Stool of Limited Liability, Indemnification, and Insurance, 42 Bus.Law. 399, 414 (1987).

In addition to the weight of this authority, there is a compelling argument on Conti's side. It is simply that there would be no point to the carefully crafted provisions of Section 145 spelling out the permissible scope of indemnification under Delaware law if subsection (f) allowed indemnification in additional circumstances without regard to these limits. The exception would swallow the rule.

It is not true, as Waltuch maintains, that on this approach, the rule swallows the exception. Even when circumscribed by the limitations set forth in the other subsections, subsection (f) still "may authorize the adoption of various procedures and presumptions to make the process of indemnification more favorable to the indemnitee without violating the statute." Balotti & Finkelstein, supra, § 4.16, at 4–320.

In sum, subsection (f) does not permit indemnification without regard to the limitations set forth in the other subsections of Section 145. Thus, Waltuch must show either that he "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation" or that he "has been successful on the merits or otherwise" in defense of the actions against him. These questions are addressed below in Sections III and IV. Resolution of the cross summary judgment

motions on Waltuch's Article Ninth Claim depends on the outcomes there.

### III.

Count III of the complaint sets forth Waltuch's indemnity claim against Conti under Section 42(c) of Conti's by-laws. That section provides:

> To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsection (a) or (b), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

The dispute between the parties under Section 42(c) is whether Waltuch "has been successful on the merits or otherwise" in defending the actions for which he seeks to be indemnified.

The Special Committee rejected Waltuch's Section 42(c) indemnity claim with the exception of the expenses incurred in Michelson. With regard to the remaining private actions, the Special Committee found that "100% of the $37 million paid to settle them was attributable to Waltuch's conduct" and that under these circumstances "it [could] not be determined as a matter of law that the dismissal of the private actions as to Waltuch constituted success on the merits or otherwise." The Special Committee also found that Waltuch was not entitled to indemnification for the CFTC enforcement proceeding against him because, in light of the "not insubstantial punishment agreed to by him" in that case, he was not "successful."

Waltuch moves for summary judgment with regard to the eight private actions listed in the complaint, but not the CFTC proceeding. Conti moves for summary judgment on all the actions.

#### i. The Private Actions.

All of the private actions listed in the complaint were settled by payments from Conti to the various plaintiffs. Waltuch paid nothing. In seven of the eight actions, Wal-

tuch was released as part of the negotiated settlement. However, in *Michelson v. Merrill Lynch, Pierce, Fenner & Smith*, 619 F.Supp. 727 (S.D.N.Y.), the case against Waltuch was dismissed for insufficient service of process. The Special Committee correctly concluded that Waltuch should be indemnified for the expenses incurred in the *Michelson* action since a defendant has been successful "on the merits or otherwise" if he "successfully asserts a 'technical' defense, such as a defense based upon a statute of limitations," Balotti & Finkelstein, *supra*, § 4.13, at 4–302. The remaining private actions are discussed below.

Waltuch argues that he has been successful on the merits or otherwise in defending the remaining seven private actions because they were all dismissed with prejudice as part of negotiated settlements without any assumption of liability by Waltuch. Conti counters that no Delaware court has ever found the phrase "successful on the merits or otherwise" to encompass actions resolved by negotiated settlement and that, in any event, Waltuch was not successful since the settlements of the private actions all involved payments solely by Conti on Waltuch's behalf.

It is true, as Conti maintains, that no Delaware court has ever found the phrase "successful on the merits or otherwise" to encompass actions resolved by negotiated settlement. However, two non-Delaware courts have explicitly come to that conclusion where the dismissal as a result of settlement is with prejudice and without any payment or assumption of liability. *Wisener v. Air Express Int'l Corp.*, 583 F.2d 579 (2d Cir.1978) (interpreting Illinois law); *B & B Inv. Club v. Kleinert's, Inc.*, 472 F.Supp. 787 (E.D.Pa. 1979) (interpreting Pennsylvania law). In addition, commentators have reached the same conclusion regarding Delaware law. Balotti & Finkelstein, *supra*, § 4.13, at 4–302; Veasey & Mongan, *supra*, at 532. Moreover, any other interpretation would be counterproductive because it would require parties to insist on plenary proceedings to be indemnified even when they could successfully settle at an earlier point.

The more difficult issue concerns the validity of Conti's argument that Waltuch was not successful on the merits or otherwise "since the settlements of the civil actions all involved a payment by Conti on Waltuch's behalf."

Waltuch maintains that Conti's settlement payments are not relevant to his own success on the merits. He points out that "the simple fact is that the underlying private actions here at issue were dismissed with prejudice as to Waltuch without his having paid a penny" and argues that Conti should not now be allowed to escape Waltuch's claim for indemnification "by settling for its own personal reasons, and then claiming that the payment was really 'on behalf of' or 'for the benefit of' " Waltuch.

Conti claims that it was sued in these cases largely because of Waltuch's conduct, that there is no evidence that Waltuch would have been released without consideration by any plaintiff and that Conti made its settlement payments conditional on the release of Waltuch. Conti also points out that in the only case in which Conti did not make a settlement payment on Waltuch's behalf—the CFTC enforcement action—Waltuch had to submit to severe non-monetary sanctions and make a substantial cash payment.

Waltuch offers no contrary evidence. However, he argues that, even if it is assumed "for the purposes of this summary judgment motion" that Conti could have paid less if it had not insisted on a dismissal for Waltuch as well, he has nevertheless been "success[ful] on the merits or otherwise."

Waltuch relies on *B & B Investment Club v. Kleinert's, Inc.*, 472 F.Supp. 787 (E.D.Pa. 1979). The court in that case held that one Brubaker, a corporate officer, was successful "on the merits or otherwise" and therefore entitled to indemnity under Pennsylvania law, where he was dismissed from an action without making any payment to plaintiffs. A $35,000 settlement payment by his co-defendant was found not to have affected Brubaker's "success." The court stated that the extent of Brubaker's success was not "affected by Stephens' having paid sufficient consideration to enable Brubaker to negotiate a dismissal with prejudice without making any payment." *Id.* at 791.

*B & B Investment Club* merely suggests a causal link between Stephens' payment and Brubaker's dismissal with prejudice without any payment. There is no indication that Stephens paid anything on Brubaker's behalf and the case therefore is of little value in determining the issue at hand.

There is no other relevant case law. Nevertheless, I conclude that Waltuch was not "successful on the merits or otherwise." As an initial matter, Waltuch did not settle the private actions against him "without any payment or assumption of liability." Although Waltuch himself did not pay, all the settlement agreements which Waltuch entered into were supported by payments from Conti. Second, Section 42(c) of Conti's by-laws and Delaware General Corporation Law Section 145(c) mandate indemnification only to the extent that the corporate officer has been "successful on the merits or otherwise." In this case, the successful settlements cannot be credited to Waltuch but are attributable solely to Conti's settlement payments. It was not Waltuch who was successful, but Conti who was successful for him.

Section 145 contemplates indemnification when a corporation's director or officer is vindicated. *See* Balotti & Finkelstein, *supra,* § 4.12, at 4–297. In the case of mandatory indemnification under subsection (c), this is paradigmatically the case when the director or officer wins the case on its merits. Vindication is also ordinarily associated with a dismissal with prejudice without any payment. However, a director or officer is not vindicated when the reason he did not have to make a settlement payment is because someone else assumed that liability. Being bailed out· is not the same thing as being vindicated.

Finally, Waltuch should not be allowed to turn his free ride on Conti's back in the private actions to his advantage. Conti shielded Waltuch from liability in the underlying actions by its settlement payments. It would seriously jar the purpose of the indemnification statute if Waltuch were now able to turn that fact to his advantage and recover his legal expenses.

Accordingly, Conti's motion for summary judgment is granted with regard to Waltuch's indemnity claim under Section 42(c) of Conti's by-laws for the expenses incurred by him in defending the private silver actions with the exception of *Michelson.* With regard to *Michelson,* summary judgment is granted for Waltuch for the reasons stated above.

### ii. *The CFTC Enforcement Action.*

■ The CFTC proceeding, called *In re Nelson Bunker Hunt,* was resolved as to Waltuch by an Opinion and Order Accepting Offer of Settlement in which Waltuch agreed to a six-month suspension of his floor broker registration, an agreement to cease and desist from violations of the Commodity Exchange Act upon pain of contempt, an undertaking not to sell or purchase any futures contracts on any exchange floor or pit for six months and the payment of a $100,000 civil penalty.

Conti argues that this settlement cannot be characterized as a success "on the merits or otherwise." Waltuch has not responded, saving his fire power for the private actions.

■ Success on the merits or otherwise in the defense of any action, requires at least a negotiated settlement where the dismissal is with prejudice and without any payment or assumption of liability. Balotti & Finkelstein, *supra,* § 4.13, at 4–302. It is plain that Waltuch's settlement of the CFTC enforcement action does not meet this requirement. Accordingly, Conti's motion for summary judgment on Waltuch's claim under Section 42(c) is granted with regard to the expenses incurred by Waltuch in the CFTC proceeding.

### IV.

■ Count V of the complaint sets forth Waltuch's indemnity claim against Conti under Section 42(a) of Conti's by-laws. That section provides:

> The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding ... by reason of the fact that he is or was a director, officer, employee or

agent of the Corporation ... against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred by him in connection with any such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation ...

Conti moves for summary judgment that Waltuch's conduct does not satisfy the requirements of this provision. The parties disagree whether Waltuch "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation" and as to what facts should be considered in making this determination.

The Special Committee decided that the proper scope of inquiry included the "numerous allegations of specific actions which were taken in connection with the conspiracy" and, having considered the evidence submitted to it in this regard, found that Waltuch had not satisfied the "good faith" standard.

Waltuch contends that he is entitled to indemnification under Section 42(a) "so long as he did not in bad faith conspire with the Hunts and others to manipulate the silver market, since that is the only issue raised by the actions for which indemnification is sought" (emphasis omitted). He maintains that allegations regarding his lack of good faith in other respects are not relevant because "the disqualifying effect of wrongdoing ... in the context of indemnification ... is confined to the issues of the specific matter for which indemnification is sought." *Green v. Westcap Corp. of Delaware*, 492 A.2d 260, 264 (Del.Super.Ct.1985).

Conti responds that the good faith requirement standard is premised on the duty of loyalty to the corporation and for that reason requires a broader inquiry into the indemnitee's conduct. Conti argues further that, in any event, its allegations of bad faith fall within the scope of inquiry described in *Green v. Westcap Corporation* because they are based on actions taken by Waltuch in connection with the underlying conspiracy charge.

The good faith standard of conduct is based on a requirement of loyalty to the corporation. Arsht & Stapleton, *supra*, at 78. Waltuch's claim to the contrary notwithstanding, there is no indication in *Green v. Westcap Corporation* that the inquiry into an indemnitee's loyalty to the corporation should be limited to whether he is guilty of the underlying charges. It is true that *Green v. Westcap Corporation* confines the scope of inquiry into a claimant's good faith "to the issues of the specific matter for which indemnification is sought," 492 A.2d at 264, but that simply means that the inquiry is limited to issues relevant to the underlying litigation. Evidence of misconduct unrelated to Waltuch's alleged participation in a conspiracy to manipulate the silver market would fall outside that scope. However, the specific actions which Conti points to as evidence of Waltuch's bad faith (detailed below) are all relevant to the overall charge of market manipulation and are indeed the product of discovery in the underlying actions themselves.

Conti has made a very strong case for summary judgment. If its allegations were uncontroverted, they would undoubtedly establish Waltuch's bad faith. Conti alleges that:

Waltuch helped his customers evade Conti credit policies and the Comex position limit rules. He participated in the opening and trading of sham accounts, and executed orders for substantial new silver positions without obtaining the requisite margin funds, with a view to facilitating the customers' taking immediate delivery of the silver. He did so knowing that Conti itself would be financially obligated to pay the tens of millions of dollars for that silver irrespective of whether the customers ever paid. He executed give up trades for Nahas and Advicorp that violated Conti credit policies and Comex Silver Rule 7. His retroactive allocation of trades in the Fustok account violated the antifraud provisions of the Commodity Exchange Act.

Waltuch systematically lied to the Comex, federal authorities and Conti about his dealings with Bunker Hunt and the relationship among his own customers.

Even after the crash, Waltuch repeatedly lied to his own and Conti's counsel and even on the witness stand under oath at trial—lies that are demonstrably false through documentary evidence.

Moreover, review of the record leads one to conclude that the weight of the evidence supports the Special Committee's finding of bad faith. But the Special Committee was the authorized fact finder in the proceedings before it and was therefore competent to, and did make findings on genuine issues of fact. In contrast, the Federal Rules of Civil Procedure prevent a similar weighing of evidence by a court on a motion for summary judgment. Waltuch's lengthy and detailed rebuttal of Conti's evidence raises a number of significant issues of fact which prevent summary judgment.

At least the following factual questions concerning Waltuch's good faith or lack thereof are still open:

— whether Waltuch informed himself adequately about who was behind the Gillion Financial and Banque Populaire Suisse accounts;

— the significance, if any, of Conti's close monitoring of Waltuch's trading activity;

— the significance, if any, of statements by Conti officials praising Waltuch;

— whether Waltuch collaborated with his customers in violating Comex position limits and Conti credit policies;

— the degree of Waltuch's involvement in what Conti describes as six "sham accounts;"

— whether Waltuch held a good faith belief that a 500 contract give-up transaction for Nahas would be accepted by other brokerage houses without financial risk to Conti;

— whether Waltuch intentionally misrepresented what he knew of the relationships among his customers or the amount of his contact with Bunker Hunt.

Good faith determinations are necessarily fact laden and for that reason rarely decidable on summary judgment. In this case the problem is compounded by the multiplicity of the significant facts contained in the record and the impossibility of determining on papers alone their weight and significance in

relation to a determination whether Waltuch acted in good faith. In view of these circumstances and the open fact questions listed above, Conti's motion for summary judgment on Count V of the complaint is denied.

### V.

■ The complaint names both Conti and its parent company, Conti Grain, as defendants. Waltuch's claims against Conti Grain duplicate those against Conti discussed in the preceding three sections. Conti Grain moves to dismiss the complaint as to it pursuant to Fed.R.Civ.P. 12(b).

The complaint alleges that Conti Grain is liable for Waltuch's legal expenses because:

28. Defendant Continental Grain is the sole shareholder of defendant Conti.

29. Defendant Continental Grain dominates and controls the activities of defendant Conti, including the decision to grant or refuse Waltuch's claim for indemnity, payment and reimbursement with regard to the silver actions. Decisions as to whether or not to pay for plaintiff's legal fees and expenses and/or provide indemnity have been made by or under the control of officers and directors of defendant Continental Grain.

Conti Grain argues that the complaint should be dismissed as to it because it fails to allege a basis for Conti Grain's liability and, in particular, derivative liability for the actions of its subsidiary. It maintains that, even if Waltuch's allegations are taken as true, the facts alleged are not sufficient to establish domination by Conti Grain of Conti on an "alter ego" theory of parental liability, and that the complaint does not even purport to plead liability on the basis of general agency principles (a theory argued by Waltuch in his memorandum).

Waltuch responds that the allegation in the complaint that Conti Grain dominated and controlled "the very matters at issue in this litigation, namely decisions on whether or not to pay plaintiff's legal fees and/or provide indemnity" adequately supports a claim against Conti Grain on an agency theory.

"[U]nder usual agency principles, complete domination by the parent[ ] in the general conduct of the subsidiaries' affairs is not a prerequisite," *Phoenix Canada Oil Co. v. Texaco, Inc.,* 842 F.2d 1466, 1478 (3d Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 *and cert. denied,* 488 U.S. 916, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988). Accordingly, Waltuch's allegation that "Continental Grain dominates and controls the activities of defendant Conti, including the decision to grant or refuse Waltuch's claim for indemnity, payment and reimbursement with regard to the silver actions" may suffice to state a claim.

 However, the question of Conti Grain's derivative liability need not be decided because the complaint adequately states a direct, non-derivative claim against Conti Grain. It alleges that "[d]ecisions as to whether or not to pay for plaintiff's legal fees and expenses and/or provide indemnity have been made by or under the control of officers and directors of defendant Continental Grain" and, in fact, Conti Grain agrees that it—and not Conti—assumed responsibility for the determination of Waltuch's indemnity claim. The allegation that Conti Grain itself made the decision to reject Waltuch's claim is sufficient to state a claim against it.

Conti Grain contends that it cannot be liable for its determination of Waltuch's indemnification claim because "this is precisely the procedure contemplated by the Delaware General Corporation Law" and "it cannot be that compliance with the statute creates liability that would not otherwise exist."

The argument is unpersuasive. It is, of course, true that the relevant provisions of Delaware General Corporation Law and Conti's by-laws authorized Conti Grain, as sole stockholder of Conti, to make the determination as to Waltuch's indemnity claim and Conti Grain cannot be criticized for exercising that power. Nevertheless, the statutory sanction for Conti Grain's exercise of that power did not purport to immunize it from responsibility if it made a decision contrary to law or the facts. Having assumed the authority for determination of the claim, Conti Grain remains liable if ultimately it is determined that the decision was incorrect.

Accordingly, Conti Grain's motion to dismiss the complaint is denied with respect to Counts II, IV and VI.

## VI.

 The relevant provisions of Conti's Certificate of Incorporation and by-laws, as well as the applicable Delaware statute, limit indemnification to expenses "actually and necessarily incurred" or "actually and reasonably incurred." Conti argues that Waltuch has not actually incurred that portion of his legal expenses for which he has not paid his attorneys because the relevant provisions allow compensation for actual loss, but not future liability. Conti also argues that, even if these provisions permit indemnification for future liability, Waltuch is nevertheless not entitled to be indemnified for the outstanding legal fees because he is not actually liable for them. Conti contends that the fee agreement between Waltuch and his attorneys relieves him of any future liability for the remaining fees because it provides that Waltuch's outstanding liability will be satisfied only out of his recovery, if any, in the present litigation and will otherwise be forgiven.

Waltuch responds that legal fees are "incurred" when the services are rendered, regardless whether the bills have been paid. Waltuch concedes that his outstanding liability for legal fees is contingent on the outcome of his indemnity claim, but argues that this "does not somehow change the fees 'incurred' into fees which are not incurred."

The Delaware District Court has observed, in the context of an indemnity action, that "[t]he word 'incurred' means 'to become liable for' " and that "[w]here indemnity agreements use 'incurred' the indemnity agreement is against liability and not against loss or damage." *Sorensen v. Overland Corp.,* 142 F.Supp. 354, 361 (D.Del.1956), *aff'd,* 242 F.2d 70 (3d Cir.1957); *see also Webster's Ninth New Collegiate Dictionary* 611 (1985) ("incur" means "to become liable or subject to"). In *Sorensen,* the district court found that an indemnity action was time-barred because the plaintiff had "incurred" the expenses too long ago. The court concluded that the cause of action had accrued when his

attorney "rendered his last services and [plaintiff's] legal liability [for the fees] was established." *Id.*

There is no doubt that in this case the legal services for which Waltuch seeks to be indemnified have been rendered and that, since Waltuch's lawyers were not working for free, Waltuch became liable for those services. Therefore these legal expenses were actually "incurred" by Waltuch within the meaning of the provisions under which he seeks to be indemnified even though he has only paid for some of them.

Conti's additional argument, that Waltuch's legal expenses were not "incurred" because his fee agreement frees him from the responsibility of making any further payment from his own pocket, is without merit. The fee agreement provides that Waltuch's liability to his attorneys for fees will be satisfied out of his recovery in this action. However, that Waltuch's liability for the services rendered is contingent on the outcome of this case does not mean that he has no liability at all because he continues to be obligated to pursue his rights of indemnification and to pay over any proceeds attributed to his unpaid legal expenses.

In sum, since the relevant indemnification provisions permit indemnification for future liability, *Sorensen*, 142 F.Supp. at 361, and the fee agreement does not relieve Waltuch of that liability, Waltuch has "incurred" the legal expenses for which he seeks to be indemnified and therefore satisfies that requirement of the relevant provisions of Conti's Certificate of Incorporation and by-laws, as well as the applicable Delaware statute.

██ Conti also argues that Waltuch is barred from recovery because his fee agreement is not a "reasonable contingent fee" agreement, and therefore violates Disciplinary Rule 5–103(A), and because it "amounts to an assignment of his right of action against Conti" in violation of New York's champerty law, N.Y.Jud.Law § 488 (McKinney 1983). Waltuch naturally disputes these claims.

The resolution of the motions now before the court depends on whether Waltuch is entitled to be indemnified under Conti's by-laws and Certificate of Incorporation, as well as the relevant provisions of Delaware law. The validity of Waltuch's fee agreement has no bearing on that determination. Whether the apportionment of any recovery by Waltuch between him and his attorneys is unreasonable or the fee agreement impermissibly assigns the action to Waltuch's attorneys is simply not relevant to the question of Waltuch's entitlement to indemnification in the first place. For that reason, there is no need to address Conti's arguments that the fee agreement violates DR 5–103(A) or New York's champerty law. In addition, there is a serious question whether Conti has standing to raise these issues since its own liability to Waltuch is entirely unaffected by the validity of the fee agreement.

██ In any event, the fact that the fee agreement requires Waltuch to pay his attorneys 100% of any recovery from Conti attributed to his outstanding legal fees is not necessarily unreasonable. It is true that in other contexts such agreements have been declared unreasonable in violation of DR 5–103(A). *Landsman v. Moss*, 180 A.D.2d 718, 579 N.Y.S.2d 450 (2 Dept.1992) (fee agreement by which the attorneys were to receive the entire recovery up to the amount in fees still outstanding from an earlier representation plus one third of any additional recovery violated DR 5–103(A) because the attorneys had acquired too great a proprietary interest in the plaintiff's malicious prosecution action).

However, these principles cannot sensibly be transposed to indemnity actions. The recovery in an indemnity action is necessarily linked to and limited by the legal expenses incurred by the indemnitee in the underlying litigation. If the legal fees incurred have not been fully paid by the indemnitee and have been, in effect, advanced by his attorneys, DR 5–103(A) should not be construed to require the attorneys to share that recovery with their client. Such a rule would, in the case of clients without adequate resources, prevent the reimbursement of their attorneys for legal fees incurred by the indemnitee which he had not yet paid for. The requirement of full payment in advance would seriously compromise the indemnitee's ability to

defend himself in litigation for which he could potentially be indemnified by his corporation. Such a result is not only undesirable but runs counter to Delaware indemnification law which, as indicated by *Sorensen v. Overland Corporation* discussed above, permits indemnification both for legal expenses already paid for by the indemnitee and for future liability.

■■■ Nor is there merit to Conti's claim that the fee agreement violates New York's champerty law because it "amounts to an assignment of his right of action against Conti." In the first place, no actual assignment has taken place. Waltuch has brought this action in his own name. Moreover, even if there had been an assignment, it would not be unlawful because the champerty statute only prohibits assignments made "with the intent and for the purpose of bringing an action thereon." N.Y.Jud.Law § 488 (McKinney 1983); *see 1015 Gerard Realty Corp. v. A & S Improvements Corp.*, 91 A.D.2d 927, 928, 457 N.Y.S.2d 821, 822 (1 Dept.1983). Waltuch's fee agreement, by contrast, only foresees legal action "if necessary" to obtain payment from Conti. It is contingent on Conti's refusal to indemnify Waltuch on his direct demand.

### VII.

■■■ Count VII of the complaint sets forth Waltuch's claim for punitive damages. It alleges that:

50. The decision and determination of defendants not to pay for Waltuch's legal fees and expenses on an ongoing basis was made in retribution for plaintiff Waltuch's unwillingness to contribute to a settlement of litigation desired by defendants.

51. The decisions and determinations of defendants, both in failing and refusing to pay for Waltuch's legal fees and expenses on an ongoing basis, and in failing and refusing to satisfy Waltuch's demand for indemnity, payment and reimbursement, were due to ill will, malice, or intent to cause injury to plaintiff.

Waltuch's memoranda elaborate his claim. He asserts that Conti stopped advancing his legal expenses out of a "desire to punish Waltuch for his unwillingness to contribute to a monetary settlement of the *Fustok* action" and that the Special Committee's ill will is demonstrated by the fact that it did not obtain a separate legal opinion on the scope of indemnification under Del.Gen.Corp.L. § 145(f) even though counsel to the Special Committee, Charles F. Richards, Jr., had published an article prior to his retention in which he stated his view that "[a]ny agreement or by-law adopted pursuant to Section 145(f) would be subject to the public policy limitations reflected by [Section 145(a), (b) and (d)]."

Conti moves for summary judgment. It maintains that there is no evidence that Conti stopped advancing Waltuch's fees to punish him and argues that "Waltuch's secondary contention that Conti's ill-will is demonstrated by the fact that counsel to the Special Committee had written an article on Delaware law which encompassed one of the issues in Waltuch's contested claim for indemnification ... is pure fantasy."

Under Delaware law, to recover punitive damages in a breach of contract action:

the plaintiff must show that the defendant acted maliciously and without probable cause for the purpose of injuring the other party by depriving him of the benefits of the contract. Moreover, if defendant's conduct did not rise to the level of an intentional tort, or if defendant had a bona fide belief in a meritorious defense, punitive damages are not appropriate.

*Ripsom v. Beaver Blacktop, Inc.*, 1988 WL 32071, at *17 (Del.Super.Ct. Apr. 26, 1988), *aff'd mem.*, 567 A.2d 418 (Del.1989).

As discussed in the preceding sections, Waltuch's entitlement to indemnification from Conti has not been ultimately resolved because the question of Waltuch's "good faith" remains outstanding. However, even if Waltuch were to establish his right to indemnification and that Conti has breached its obligations to him by refusing payment, summary judgment in Conti's favor is appropriate on Waltuch's claim for punitive damages.

Once a moving party has made a showing that no material issues of fact are in dispute,

"an adverse party may not rest upon the mere allegations or denials of [its] pleading" to defeat a motion for summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The opponent to a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp. (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985). Waltuch's opposition to the motion does not rise above that level.

First, Waltuch's only evidence for his claim that Conti stopped advancing his legal fees in retribution for Waltuch's refusal to contribute to the *Fustok* settlement is a letter from Conti's counsel which states that:

> Conti has decided that ... it will not bear any legal fees incurred by Norton [Waltuch] in any other matters subsequent to the settlement of the Fustok case. We understand that, depending on the outcome of the other matters, Norton may have rights of indemnification but, in light of the very substantial payment that Conti had to make to settle the Fustok case, and the fact that Fustok offered to settle the case against all defendants other than Norton for $1 million less, Conti does not believe that it is appropriate to continue to advance Norton's fees. I hope that both you and he will understand and accept this, and will be mindful of the enormous burden that the silver cases have put on Conti.

There is nothing in this letter to indicate that Conti was motivated by a desire to punish Waltuch. An assertion of malice without a factual basis is insufficient to support a claim for punitive damages. *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 368 (Del.Super.Ct.1982). Moreover, Section 42(e) of Conti's by-laws and the corresponding provision of the Delaware General Corporations Law, Del.Gen.Corp.L. § 145(e), merely state that the corporation "may" advance legal expenses—it is a matter of the corporation's discretion. Since the corporation had no obligation to advance legal expenses in the first place, its failure to continue to do so does not give rise to any claim, much less a claim for punitive damages.

Second, neither that counsel to the Special Committee had published an article on a relevant issue of Delaware law prior to being retained, nor that the Committee declined Waltuch's request to obtain a separate legal opinion on this issue, is evidence of Conti's malice. Even assuming arguendo that there may be circumstances in which the deliberate choice of counsel to make a legal determination adverse to a plaintiff may give rise to a claim for punitive damages, there has been no showing in this case that the Special Committee was aware of Richards' views at the time he was selected or that the Committee was aware that the issues discussed in his article would be relevant to Waltuch's indemnity claim. In fact, Conti has submitted an affidavit by Richards in which he states that "[a]t the time I agreed to represent the Special Committee, there were no discussions of my views of the possible merits of Waltuch's claim" and specifically denies that "there were any discussions between myself and any members of the Special Committee or any representatives of Continental Grain Company or ContiCommodity Services, Inc. directed to determining how I would be inclined to advise the Special Committee." Moreover, even if at the time of Richards' appointment, Conti had been aware of his article, the mere fact that counsel held a view on relevant legal issues is not, by itself, evidence that he acted maliciously or, more to the point, that Conti's behavior in appointing him was culpable.

Finally, the test of the pudding is in the eating. Our own review of the Special Committee's report, which was based on a draft prepared by its counsel, persuades us that the legal issues were carefully examined in a balanced manner and gives no indication of bias in Conti's favor.

\* \* \*

Conti Grain's motion to dismiss the complaint as to it pursuant to Fed.R.Civ.P. 12(b), which is discussed in Section V above, seeks

**318**

to dismiss not only Waltuch's substantive claims against it, but also his claim for punitive damages. For the reasons specified in Section V, it is likely that Conti Grain's motion to dismiss the punitive damages claim would not be successful.

However, it does appear that summary judgment in Conti Grain's favor may be appropriate for the same reasons we have granted summary judgment for Conti on Waltuch's claim for punitive damages. The Federal Rules of Civil Procedure permit the conversion of a motion to dismiss for failure to state a claim into a motion for summary judgment in certain circumstances:

> [I]f, on a motion ... to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). Notice is hereby given that Conti Grain's motion to dismiss Waltuch's claim for punitive damages shall be treated as a motion for summary judgment. Conti Grain, the moving party, is instructed to submit any additional material relevant to Waltuch's claim for punitive damages against it to the Court within twenty days from the date of this opinion and Waltuch shall submit any responsive material within twenty days of service of Conti Grain's.

## VIII.

Finally, Conti moves for summary judgment on its second counterclaim for the recoupment of $1,100,864.48 in previously advanced legal expenses. Conti argues that because Waltuch has not met the applicable standards for indemnification he is required by the applicable provisions of Delaware law and Conti's by-laws to repay Conti the advanced monies.

Conti's motion for summary judgment on its recoupment claim cannot be granted. First, since it has been determined that Waltuch is entitled to be indemnified for the legal expenses actually and reasonably in-

curred by him in defending the *Michelson* action, Conti cannot recoup the monies advanced for that action. Second, since there has been no final decision as to Waltuch's entitlement to indemnity for his remaining legal expenses, the question of recoupment must await that determination.

## CONCLUSION

Waltuch's motion for summary judgment is granted with respect to the expenses actually and reasonably incurred by him in defending the *Michelson* action and otherwise denied. Conti's motion for summary judgment is granted with respect to Waltuch's claim under Section 42(c) of Conti's by-laws with the exception of the *Michelson* expenses, granted with regard to Waltuch's claim for punitive damages, and otherwise denied. Conti Grain's motion to dismiss the complaint for failure to state a cause of action against it is denied as to Counts II, IV and VI of the complaint and, as to Count VII, shall be treated as a motion for summary judgment as detailed in Section VII.

It is so ordered.