**Norton D. WALTUCH, Plaintiff–Appellant,**

v.

**CONTICOMMODITY SERVICES, INC. and Continental Grain Co., Defendants–Appellees.**

No. 447, Docket 95–7433.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1995.

Decided June 27, 1996.

---

Peter M. Fishbein, Kaye, Scholer, Fierman, Hays & Handler, New York City (Steven J. Glassman, New York City, on the brief), for Plaintiff–Appellant.

Richard A. Rosen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Gregory A. Clarick, New York City, on the brief), for Defendants–Appellees.

Before: VAN GRAAFEILAND, JACOBS and PARKER, Circuit Judges.

JACOBS, Circuit Judge:

Famed silver trader Norton Waltuch spent $2.2 million in unreimbursed legal fees to defend himself against numerous civil lawsuits and an enforcement proceeding brought by the Commodity Futures Trading Commission (CFTC). In this action under Delaware law, Waltuch seeks indemnification of his legal expenses from his former employer. The district court denied any indemnity, and Waltuch appeals.

As vice-president and chief metals trader for Conticommodity Services, Inc., Waltuch traded silver for the firm's clients, as well as for his own account. In late 1979 and early 1980, the silver price spiked upward as the then-billionaire Hunt brothers and several of Waltuch's foreign clients bought huge quantities of silver futures contracts. Just as rapidly, the price fell until (on a day remembered in trading circles as "Silver Thursday") the silver market crashed. Between 1981 and 1985, angry silver speculators filed numerous lawsuits against Waltuch and Conticommodity, alleging fraud, market manipulation, and antitrust violations. All of the suits eventually settled and were dismissed with prejudice, pursuant to settlements in which Conticommodity paid over $35 million to the various suitors. Waltuch himself was dismissed from the suits with no settlement contribution. His unreimbursed legal expenses in these actions total approximately $1.2 million.

Waltuch was also the subject of an enforcement proceeding brought by the CFTC, charging him with fraud and market manipulation. The proceeding was settled, with Waltuch agreeing to a penalty that included a $100,000 fine and a six-month ban on buying or selling futures contracts from any exchange floor. Waltuch spent $1 million in unreimbursed legal fees in the CFTC proceeding.[1]

Waltuch brought suit in the United States District Court for the Southern District of New York (Lasker, J.) against Conticommodity and its parent company, Continental Grain Co. (together "Conti"), for indemnifica-

1. The parties have stipulated that Waltuch's "reasonable attorney's fees and costs" for the private lawsuits totaled $1,228,586.67, and that the comparable expenses for the CFTC proceeding are an even $1 million.

tion of his unreimbursed expenses.[2] Only two of Waltuch's claims reach us on appeal.

Waltuch first claims that Article Ninth of Conticommodity's articles of incorporation requires Conti to indemnify him for his expenses in both the private and CFTC actions. Conti responds that this claim is barred by subsection (a) of § 145 of Delaware's General Corporation Law, which permits indemnification only if the corporate officer acted "in good faith," something that Waltuch has not established. Waltuch counters that subsection (f) of the same statute permits a corporation to grant indemnification rights outside the limits of subsection (a), and that Conticommodity did so with Article Ninth (which has no stated good-faith limitation). The district court held that, notwithstanding § 145(f), Waltuch could recover under Article Ninth only if Waltuch met the "good faith" requirement of § 145(a).[3] 833 F.Supp. 302, 308–09 (S.D.N.Y.1993). On the factual issue of whether Waltuch had acted "in good faith," the court denied Conti's summary judgment motion and cleared the way for trial. *Id.* at 313. The parties then stipulated that they would forgo trial on the issue of Waltuch's "good faith," agree to an entry of final judgment against Waltuch on his claim under Article Ninth and § 145(f), and allow Waltuch to take an immediate appeal of the judgment to this Court. Thus, as to Waltuch's first claim, the only question left is how to interpret §§ 145(a) and 145(f), assuming Waltuch acted with less than "good faith." As we explain in part I below, we affirm the district court's judgment as to this claim and hold that § 145(f) does not permit a corporation to bypass the "good faith" requirement of § 145(a).

Waltuch's second claim is that subsection (c) of § 145 requires Conti to indemnify him because he was "successful on the merits or otherwise" in the private lawsuits.[4] The district court ruled for Conti on this claim as well. The court explained that, even though all the suits against Waltuch were dismissed without his making any payment, he was not "successful on the merits or otherwise," because Conti's settlement payments to the plaintiffs were partially on Waltuch's behalf. *Id.* at 311. For the reasons stated in part II below, we reverse this portion of the district court's ruling, and hold that Conti must indemnify Waltuch under § 145(c) for the $1.2 million in unreimbursed legal fees he spent in defending the private lawsuits.

I

■ Article Ninth, on which Waltuch bases his first claim, is categorical and contains no requirement of "good faith":

> The Corporation shall indemnify and hold harmless each of its incumbent or former directors, officers, employees and agents ... against expenses actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding threatened, pending or completed, in which he is made a party, by reason of his serving in or having held such position or capacity, except in relation to matters as to which he shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty.[5]

Conti argues that § 145(a) of Delaware's General Corporation Law, which does con-

---

**2.** Conticommodity and Continental Grain are incorporated in Delaware and have their principal places of business in New York; Waltuch is a New Jersey citizen. We therefore have diversity jurisdiction under 28 U.S.C. § 1332. All parties agree that Delaware law governs.

**3.** A Special Committee of Continental Grain Co.'s Board of Directors reached the same conclusion in November 1991. Waltuch filed his complaint two months later. In the district court, Conti argued that under the business judgment rule, the Special Committee's decision was immune from challenge, an argument the district court rejected. 833 F.Supp. at 305. Although the parties signed a stipulation preserving Conti's

right to contest the district court's ruling on this issue, Conti has abandoned its business judgment rule argument on appeal.

**4.** The district court held that Waltuch was not successful "on the merits or otherwise" in the CFTC proceeding. 833 F.Supp. at 311. Waltuch does not appeal this aspect of the court's ruling.

**5.** Because the private suits and the CFTC proceeding were settled, it is undisputed that Waltuch was not "adjudged ... to be liable for negligence or misconduct in the performance of duty."

tain a "good faith" requirement, fixes the outer limits of a corporation's power to indemnify; Article Ninth is thus invalid under Delaware law, says Conti, to the extent that it requires indemnification of officers who have acted in bad faith. The affirmative grant of power in § 145(a) is as follows:

A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

56 Del. Laws 50, § 1 at 170–71 (1967) (emphasis added) (rewriting Delaware's General Corporation Law, title 8, chapter 1 of the

Delaware Code), codified at 8 Del.Code Ann. tit. 8, § 145(a) (Michie 1991). Key language in the Delaware Code Annotated's version of this subsection is in error, as explained in the margin.[6]

In order to escape the "good faith" clause of § 145(a), Waltuch argues that § 145(a) is not an exclusive grant of indemnification power, because § 145(f) expressly allows corporations to indemnify officers in a manner broader than that set out in § 145(a). The "nonexclusivity" language of § 145(f) provides:

The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

56 Del. Laws 50, § 1 at 172 (emphasis added), as amended and codified at 8 Del.Code Ann. tit. 8, § 145(f). Waltuch contends that the "nonexclusivity" language in § 145(f) is a separate grant of indemnification power, not limited by the good faith clause that governs the power granted in § 145(a). Conti on the other hand contends that § 145(f) must be limited by "public policies," one of which is

**6.** There is some confusion about whether this subsection begins, "A corporation shall have power to indemnify ..." or "A corporation may indemnify ...". As originally enacted, § 145(a) contained the phrase "shall have power". 56 Del. Laws 50, § 1 at 170 (1967). According to the annotations in the Delaware Code Annotated (and confirmed by a review of the legislative records since 1967), § 145(a) has never been amended. See 8 Del.Code Ann. tit. 8, § 145(a) (1991 & 1995 Supp.).

Nevertheless, the Delaware Code Annotated, a private compilation by the Michie Company of all Delaware legislative acts, at some point began using the phrase "may" in place of "shall have power". See 8 Del.Code Ann. tit. 8, § 145(a) (1974). We have not been able to explain this non-legislative change in statutory language. The Delaware Corporation Law Annotated, published by the Corporation Trust Company, continues to use the phrase "shall have power". Del. Corp. L. Ann. § 145(a) (20th ed. Corp. Trust.Co.1991).

One treatise uses the phrase "shall have power", see Ernest L. Folk, III, et al., Folk on the Delaware General Corporation Law at 145:1 (3d ed.1994), while another uses "may". See 5 R. Franklin Balotti & Jesse A. Finkelstein, The Delaware Law of Corporations and Business Organizations at 100 (1990 & 1993 Supp.) ("Balotti & Finkelstein"). The parties to this appeal perpetuate the confusion: their joint appendix contains a version of § 145(a) that says "shall have power", but one of the briefs quotes a version that says "may".

When there is a conflict between an original enactment of the Delaware Legislature and the codification of the law, the original enactment controls. Elliott v. Blue Cross & Blue Shield, 407 A.2d 524, 528 (Del.1979); Kimmey v. Farmers Bank, 373 A.2d 569, 570 (Del.1977). We therefore employ the Legislature's version of § 145(a), which says "shall have power".

We are indebted to Lesley Lawrence and the staff at the Third Circuit library in Wilmington for their assistance on this issue.

that a corporation may indemnify its officers only if they act in "good faith."

In a thorough and scholarly opinion, Judge Lasker agreed with Conti's reading of § 145(f), writing that "it has been generally agreed that there are public policy limits on indemnification under Section 145(f)," although it was "difficult . . . to define precisely what limitations on indemnification public policy imposes." 833 F.Supp. at 307, 308. After reviewing cases from Delaware and elsewhere and finding that they provided no authoritative guidance, Judge Lasker surveyed the numerous commentators on this issue and found that they generally agreed with Conti's position. *Id.* at 308–09. He also found that Waltuch's reading of § 145(f) failed to make sense of the statute as a whole:

> [T]here would be no point to the carefully crafted provisions of Section 145 spelling out the permissible scope of indemnification under Delaware law if subsection (f) allowed indemnification in additional circumstances without regard to these limits. The exception would swallow the rule.

*Id.* at 309. The fact that § 145(f) was limited by § 145(a) did not make § 145(f) meaningless, wrote Judge Lasker, because § 145(f) "still 'may authorize the adoption of various procedures and presumptions to make the process of indemnification more favorable to the indemnitee without violating the statute.'" *Id.* at 309 (quoting 1 Balotti & Finkelstein § 4.16 at 4–321). As will be evident from the discussion below, we adopt much of Judge Lasker's analysis.

### A. Delaware Cases

No Delaware court has decided the very issue presented here; but the applicable cases tend to support the proposition that a corporation's grant of indemnification rights cannot be *inconsistent* with the substantive statutory provisions of § 145, notwithstanding § 145(f). We draw this rule of "consistency" primarily from our reading of the Delaware Supreme Court's opinion in *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339 (Del.1983). In that case, Hibbert and certain

other directors sued the corporation and the remaining directors, and then demanded indemnification for their expenses and fees related to the litigation. The company refused indemnification on the ground that directors were entitled to indemnification only as *defendants* in legal proceedings. The court reversed the trial court and held that Hibbert was entitled to indemnification under the plain terms of a company bylaw that did not draw an express distinction between plaintiff directors and defendant directors. *Id.* at 343. The court then proceeded to test the bylaw for consistency with § 145(a):

> Furthermore, *indemnification here is consistent with current Delaware law.* Under 8 Del.C. § 145(a) . . . , "a corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed" derivative or third-party action. By this language, indemnity is *not limited to* only those who stand as a defendant in the main action. The corporation can also grant indemnification rights beyond those provided by statute. 8 Del.C. § 145(f).

*Id.* at 344 (emphasis added and citations omitted). *See supra* note 6 (explaining the error in the *Delaware Code Annotated*'s use of the phrase "may indemnify" in § 145(a)). This passage contains two complementary propositions. Under § 145(f), a corporation may provide indemnification rights that go "beyond" the rights provided by § 145(a) and the other substantive subsections of § 145. At the same time, any such indemnification rights provided by a corporation must be "consistent with" the substantive provisions of § 145, including § 145(a). In *Hibbert*, the corporate bylaw was "consistent with" § 145(a), because this subsection was "not limited to" suits in which directors were defendants. *Hibbert*'s holding may support an inverse corollary that illuminates our case: if § 145(a) had been expressly limited to directors who were named as defendants, the bylaw could not have stood, regardless of § 145(f), because the bylaw would not have been "consistent with" the substantive statutory provision.[7]

---

7. The *Hibbert* court cites to a 1978 article by Samuel Arsht, chairman of the committee of experts that drafted Delaware's General Corporation Law in 1967, *id.*, which supports our conclu-

A more recent opinion of the Delaware Supreme Court, analyzing a different provision of § 145, also supports the view that the express limits in § 145's substantive provisions are not subordinated to § 145(f). In *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (Del.1992), a corporation's bylaws provided indemnification "to the full extent permitted by the General Corporation Law of Delaware." The corporation entered into an indemnification agreement with one of its directors, reciting the parties' intent to afford enhanced protection in some unspecified way. The director contended that the agreement was intended to afford mandatory advancement of expenses, and that this feature (when compared with the merely permissive advancement provision of § 145(e)) was the enhancement intended by the parties. The corporation, seeking to avoid advancement of expenses, argued instead that the agreement enhanced the director's protection only in the sense that the pre-contract indemnification rights were subject to statute, whereas his rights under the contract could not be diminished without his consent. *Id.*

In rejecting that argument, the court explained that indemnification rights provided by contract could not exceed the "scope" of a corporation's indemnification powers as set out by the statute:

> If the General Assembly were to amend Delaware's director indemnification statute with the effect of curtailing the scope of indemnification a corporation may grant a director, the fact that [the director's] rights were also secured by contract would be of little use to him. Private parties may not circumvent the legislative will simply by agreeing to do so.

*Id.* *Citadel* thus confirms the dual propositions stated in *Hibbert:* indemnification rights may be broader than those set out in the statute, but they cannot be inconsistent with the "scope" of the corporation's power to indemnify, as delineated in the statute's substantive provisions. *See also Shearin v. E.F. Hutton Group, Inc.,* 652 A.2d 578, 593–94 & n. 19 (Del.Ch.1994) (Allen, Ch.) (bylaw that provided indemnification "to the full extent permissible under Section 145" must be interpreted in way that is consistent with substantive provisions of § 145(a); nonexclusivity provision of § 145(f) not mentioned by the court); *Merritt–Chapman & Scott Corp. v. Wolfson,* 321 A.2d 138, 142 (Del.Super.Ct.1974) (bylaw provided for mandatory entitlement to indemnification unless officer was "derelict in the performance of his duty"; although the court considered this entitlement to be "independent of any right under the statute," it did not hold that the bylaw was inconsistent with the "good faith" standard of § 145(a)).

## B. Statutory Reading.

The "consistency" rule suggested by these Delaware cases is reinforced by our reading of § 145 as a whole. Subsections (a) (indemnification for third-party actions) and (b) (similar indemnification for derivative suits) expressly grant a corporation the power to indemnify directors, officers, and others, if they "acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the corporation." These provisions thus limit the scope of the power that they confer. They are permissive in the sense that a corporation may exercise less than its full power to grant the indemnification rights set out in these provisions.[8]

---

sion that indemnification rights permitted under § 145(f) must be consistent with the other substantive provisions of § 145. At the pages cited by the court, Arsht writes:

> The question most frequently asked by practicing lawyers is what subsection (f), the nonexclusive clause, means.... The question which subsection (f) invariably raises is whether a corporation can adopt a by-law or make a contract with its directors providing that they will be indemnified for whatever they may have to pay if they are sued and lose or settle. The answer to this question is "no." Subsection (f) ... permits additional rights to be

created, but *it is not a blanket authorization to indemnify directors* against all expenses, fines, or settlements of whatever nature and *regardless of the directors' conduct.* The statutory language is circumscribed by limits of public policy....

S. Samuel Arsht, *Indemnification Under Section 145 of Delaware General Corporation Law,* 3 Del. J. Corp. L. 176, 176–77 (1978) (emphasis added).

8. We therefore disagree with *PepsiCo, Inc. v. Continental Casualty Co.,* 640 F.Supp. 656, 661 (S.D.N.Y.1986), which characterizes subsections (a) and (b) as "'backstop' provisions." A leading treatise on Delaware corporate law casts doubt

*See Essential Enter. Corp. v. Dorsey Corp.,* 182 A.2d 647, 653 (Del.Ch.1962). By the same token, subsection (f) permits the corporation to grant additional rights: the rights provided in the rest of § 145 "shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled." But crucially, subsection (f) merely acknowledges that one seeking indemnification may be entitled to "other rights" (of indemnification or otherwise); it does not speak in terms of corporate power, and therefore cannot be read to free a corporation from the "good faith" limit explicitly imposed in subsections (a) and (b).

An alternative construction of these provisions would effectively force us to ignore certain explicit terms of the statute. Section 145(a) gives Conti the power to indemnify Waltuch "*if* he acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the corporation." 56 Del. Laws 50, § 1 at 171 (emphasis added). This statutory limit must mean that there is *no power* to indemnify Waltuch if he did not act in good faith. Otherwise, as Judge Lasker pointed out, § 145(a)—and its good faith clause—would have no meaning: a corporation could indemnify whomever and however it wished regardless of the good faith clause or anything else the Delaware Legislature wrote into § 145(a).

When the Legislature intended a subsection of § 145 to augment the powers limited in subsection (a), it set out the additional powers expressly. Thus subsection (g) explicitly allows a corporation to circumvent the "good faith" clause of subsection (a) by purchasing a directors and officers liability insurance policy. Significantly, that subsection is framed as a grant of corporate power:

> A corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation ... against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, *whether or not the corporation would have*

*the power to indemnify him against such liability under this section.*

56 Del. Laws 50, § 1 at 172 (1967) (emphasis added), *codified at* 8 Del.Code Ann. tit. 8, § 145(g) (Michie 1991). The italicized passage reflects the principle that corporations have the power under § 145 to indemnify in some situations and not in others. Since § 145(f) is neither a grant of corporate power nor a limitation on such power, subsection (g) must be referring to the limitations set out in § 145(a) and the other provisions of § 145 that describe corporate power. If § 145 (through subsection (f) or another part of the statute) gave corporations unlimited power to indemnify directors and officers, then the final clause of subsection (g) would be unnecessary: that is, its grant of "power to purchase and maintain insurance" (exercisable regardless of whether the corporation itself would have the power to indemnify the loss directly) is meaningful only because, in some insurable situations, the corporation simply lacks the power to indemnify its directors and officers directly.

A contemporaneous account from the principal drafter of Delaware's General Corporation Law confirms what an integral reading of § 145 demonstrates: the statute's affirmative grants of power also impose limitations on the corporation's power to indemnify. Specifically, the good faith clause (unchanged since the Law's original enactment in 1967) was included in subsections (a) and (b) as a carefully calculated improvement on the prior indemnification provision and as an explicit limit on a corporation's power to indemnify:

> During the three years of the Revision Committee's study, no subject was more discussed among members of the corporate bar than the subject of indemnification of officers and directors. As far as Delaware law was concerned, the existing statutory provision on the subject had been found inadequate. Numerous by-laws and charter provisions had been adopted clarifying and extending its terms, but *uncertainty existed in many instances as to whether*

on *PepsiCo,* finding it "questionable whether a Delaware court would be quite this sweeping in its language in a case properly presented to it

involving the outer limits of the authority provided in Section 145(f)." 1 Balotti & Finkelstein, § 4.16 at 4–319.

*such provisions transgressed the limits* which the courts had indicated they would establish based on public policy.

. . .

It was . . . apparent that revision was appropriate with respect to *the limitations which must necessarily be placed on the power to indemnify* in order to prevent the statute from undermining the substantive provisions of the criminal law and corporation law. . . .

[There was a] need for a . . . provision to protect the corporation law's requirement of loyalty to the corporation. . . . Ultimately, it was decided that *the power to indemnify should not be granted unless* it appeared that the person seeking indemnification had "acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the corporation."

S. Samuel Arsht & Walter K. Stapleton, *Delaware's New General Corporation Law: Substantive Changes,* 23 Bus. Law. 75, 77–78 (1967).[9] This passage supports *Hibbert*'s rule of "consistency" and makes clear that a corporation has no power to transgress the indemnification limits set out in the substantive provisions of § 145.

Waltuch argues at length that reading § 145(a) to bar the indemnification of officers who acted in bad faith would render § 145(f) meaningless. This argument misreads

§ 145(f). That subsection refers to "any other rights to which those seeking indemnification or advancement of expenses may be entitled." Delaware commentators have identified various indemnification rights that are "beyond those provided by statute," *Hibbert,* 457 A.2d at 344, and that are at the same time consistent with the statute:

[S]ubsection (f) provides general authorization for the adoption of various procedures and presumptions making the process of indemnification more favorable to the indemnitee. For example, indemnification agreements or by-laws could provide for: (i) mandatory indemnification unless prohibited by statute; (ii) mandatory advancement of expenses, which the indemnitee can, in many instances, obtain on demand; (iii) accelerated procedures for the "determination" required by section 145(d) to be made in the "specific case"; (iv) litigation "appeal" rights of the indemnitee in the event of an unfavorable determination; (v) procedures under which a favorable determination will be deemed to have been made under circumstances where the board fails or refuses to act; [and] (vi) reasonable funding mechanisms.

E. Norman Veasey, et al., *Delaware Supports Directors With a Three–Legged Stool of Limited Liability, Indemnification, and Insurance,* 42 Bus. Law. 399, 415 (1987).[10] Moreover, subsection (f) may reference non-

---

**9.** Delaware commentators consider this article to be part of (if not all of) "[t]he legislative history of Section 145." A. Gilchrist Sparks, III, et al., *Indemnification, Directors and Officers Liability Insurance and Limitations of Director Liability Pursuant to Statutory Authorization: The Legal Framework Under Delaware Law,* 696 PLI/Corp 941 (1990) (at page 10 out of 123 on Westlaw).

Since it is clear that the 1967 statute changed the prior indemnification statute by making certain "public policy" limits explicit, we may easily distinguish the pre–1967 case, *Mooney v. Willys–Overland Motors, Inc.,* 204 F.2d 888 (3d Cir. 1953), on which Waltuch relies heavily. In *Mooney,* the court held that an indemnification agreement between corporation and director provided "an independent ground for the payment of litigation expenses," which was valid under the (prior) statute's nonexclusivity provision (similar to § 145(f)). *Id.* at 896. But the court did not see any inconsistency between this "independent" indemnification right and the "realistic limits [that the statutory provisions] set upon the

right of indemnification," limits which the court said "met the requirements of public policy." *Id.*

As the Arsht and Stapleton article explains, the Legislature enacted the "good faith" clause after *Mooney* to make the State's "public policy" explicit: a corporation could not indemnify directors and officers who breached their duty of loyalty to the corporation. Because *Mooney* interpreted the pre–1967 statute, and because it does not contradict *Hibbert*'s "consistency" rule, it therefore provides no support for Waltuch's contention that the good faith limit can be evaded by reference to the statute's nonexclusivity provision.

**10.** Veasey is now Chief Justice of the Delaware Supreme Court. *See also* 1 Balotti & Finkelstein § 4.16 at 4–321, which makes the same suggestions. Other suggestions are made in Joseph F. Johnston, Jr., *Corporate Indemnification and Liability Insurance for Directors and Officers,* 33 Bus. Law. 1993, 1996, 2009–10 (1978).

indemnification rights, such as advancement rights or rights to other payments from the corporation that do not qualify as indemnification.

We need not decide in this case the precise scope of those "other rights" adverted to in § 145(f). We simply conclude that § 145(f) is not rendered meaningless or inoperative by the conclusion that a Delaware corporation lacks power to indemnify an officer or director "unless [he] 'acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the corporation.'" *See* Arsht & Stapleton, 23 Bus. Law. at 78. As a result, we hold that Conti's Article Ninth, which would require indemnification of Waltuch even if he acted in bad faith, is inconsistent with § 145(a) and thus exceeds the scope of a Delaware corporation's power to indemnify. Since Waltuch has agreed to forgo his opportunity to prove at trial that he acted in good faith, he is not entitled to indemnification under Article Ninth for the $2.2 million he spent in connection with the private lawsuits and the CFTC proceeding. We therefore affirm the district court on this issue.

## II

■ Unlike § 145(a), which grants a discretionary indemnification power, § 145(c) affirmatively *requires* corporations to indemnify its officers and directors for the "successful" defense of certain claims:

> To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

56 Del. Laws 50, § 1 at 171 (1967), *codified at* 8 Del.Code Ann. tit. 8, § 145(c) (Michie 1991). Waltuch argues that he was "successful on the merits or otherwise" in the private lawsuits, because they were dismissed with

prejudice without any payment or assumption of liability by him. Conti argues that the claims against Waltuch were dismissed only because of Conti's $35 million settlement payments, and that this payment was contributed, in part, "on behalf of Waltuch." [11]

The district court agreed with Conti that "the successful settlements cannot be credited to Waltuch but are attributable solely to Conti's settlement payments. It was not Waltuch who was successful, but Conti who was successful for him." 833 F.Supp. at 311. The district court held that § 145(c) mandates indemnification when the director or officer "is vindicated," but that there was no vindication here:

> Vindication is also ordinarily associated with a dismissal with prejudice without any payment. However, a director or officer is not vindicated when the reason he did not have to make a settlement payment is because someone else assumed that liability. Being bailed out is not the same thing as being vindicated.

*Id.* We believe that this understanding and application of the "vindication" concept is overly broad and is inconsistent with a proper interpretation of § 145(c).

No Delaware court has applied § 145(c) in the context of indemnification stemming from the settlement of civil litigation. One lower court, however, has applied that subsection to an analogous case in the criminal context, and has illuminated the link between "vindication" and the statutory phrase, "successful on the merits or otherwise." In *Merritt–Chapman & Scott.Corp. v. Wolfson,* 321 A.2d 138 (Del.Super.Ct.1974), the corporation's agents were charged with several counts of criminal conduct. A jury found them guilty on some counts, but deadlocked on the others. The agents entered into a "settlement" with the prosecutor's office by pleading nolo contendere to one of the counts in exchange for the dropping of the rest. *Id.* at 140. The agents claimed entitlement to mandatory indemnification under § 145(c) as to the counts that were dismissed. In opposition, the cor-

---

11. Although this is not essential to our holding, we note that Conti points to no evidence in support of its contention that the plaintiffs would have continued to pursue their suits as to Waltuch if Conti had paid some lesser amount.

poration raised an argument similar to the argument raised by Conti:

[The corporation] argues that the statute and sound public policy require indemnification only where there has been vindication by a finding or concession of innocence. *It contends that the charges against [the agents] were dropped for practical reasons,* not because of their innocence. . . .

The statute requires indemnification to the extent that the claimant "has been successful on the merits or otherwise." *Success is vindication.* In a criminal action, any result other than conviction must be considered success. *Going behind the result,* as [the corporation] attempts, is neither authorized by subsection (c) nor consistent with the presumption of innocence.

*Id.* at 141 (emphasis added).

Although the underlying proceeding in *Merritt* was criminal, the court's analysis is instructive here. The agents in *Merritt* rendered consideration—their guilty plea on one count—to achieve the dismissal of the other counts. The court considered these dismissals both "success" and (therefore) "vindication," and refused to "go[ ] behind the result" or to appraise the reason for the success. In equating "success" with "vindication," the court thus rejected the more expansive view of vindication urged by the corporation. Under *Merritt*'s holding, then, vindication, when used as a synonym for "success" under § 145(c), does not mean moral exoneration. Escape from an adverse judgment or other detriment, for whatever reason, is determinative. According to *Merritt*, the only question

a court may ask is what the result was, not why it was.[12]

Conti's contention that, because of its $35 million settlement payments, Waltuch's settlement without payment should not really count as settlement without payment, is inconsistent with the rule in *Merritt*. Here, Waltuch was sued, and the suit was dismissed without his having paid a settlement. Under the approach taken in *Merritt*, it is not our business to ask why this result was reached. Once Waltuch achieved his settlement gratis, he achieved success "on the merits or otherwise." And, as we know from *Merritt*, success is sufficient to constitute vindication (at least for the purposes of § 145(c)). Waltuch's settlement thus vindicated him.

The concept of "vindication" pressed by Conti is also inconsistent with the fact that a director or officer who is able to defeat an adversary's claim by asserting a technical defense is entitled to indemnification under § 145(c). *See* 1 Balotti & Finkelstein, § 4.13 at 4–302. In such cases, the indemnitee has been "successful" in the palpable sense that he has won, and the suit has been dismissed, whether or not the victory is deserved in merits terms. If a technical defense is deemed "vindication" under Delaware law, it cannot matter why Waltuch emerged unscathed, or whether Conti "bailed [him] out", or whether his success was deserved. Under § 145(c), mere success is vindication enough.

This conclusion comports with the reality that civil judgments and settlements are ordinarily expressed in terms of cash rather than moral victory. No doubt, it would make sense for Conti to buy the dismissal of the claims against Waltuch along with its own

---

**12.** Our adoption of *Merritt*'s interpretation of the statutory term "successful" does not necessarily signal our endorsement of the result in that case. The *Merritt* court sliced the case into individual counts, with indemnification pegged to each count independently of the others. We are not faced with a case in which the corporate officer claims to have been "successful" on some parts of the case but was clearly "unsuccessful" on others, and therefore take no position on this feature of the *Merritt* holding.

We also do not mean our discussion of *Merritt* to suggest that the line between success and failure in a criminal case may be drawn in the

same way in the civil context. In a criminal case, conviction on a particular count is obvious failure, and dismissal of the charge is obvious success. In a civil suit for damages, however, there is a monetary continuum between complete success (dismissal of the suit without any payment) and complete failure (payment of the full amount of damages requested by the plaintiff). Because Waltuch made no payment in connection with the dismissal of the suits against him, we need not decide whether a defendant's settlement payment automatically renders that defendant "unsuccessful" under § 145(c).

discharge from the case, perhaps to avoid further expense or participation as a non-party, potential cross-claims, or negative publicity. But Waltuch apparently did not accede to that arrangement, and Delaware law cannot allow an indemnifying corporation to escape the mandatory indemnification of subsection (c) by paying a sum in settlement on behalf of an unwilling indemnitee.

We note that two non-Delaware precedents (one from this Court) support our conclusion. In *Wisener v. Air Express Int'l Corp.*, 583 F.2d 579 (2d Cir.1978), we construed an Illinois indemnification statute that was intentionally enacted as a copy of Delaware's § 145. *See id.* at 582 n. 3; 1 Balotti & Finkelstein, § 4.12 at 4–296 n. 1048 (§ 145 was the "prototype" for Illinois's indemnification statute). Our holding in that case is perfectly applicable here:

> It is contended that [the director] was not "successful" in the litigation, since the third-party claims against him never proceeded to trial. The statute, however, refers to success "on the merits or otherwise," which surely is broad enough to cover a termination of claims by agreement without any payment or assumption of liability.

583 F.2d at 583. It is undisputed that the private lawsuits against Conti and Waltuch were dismissed with prejudice, "without any payment of assumption of liability" by Waltuch. Applying the analysis of *Wisener*, Conti must indemnify Waltuch for his expenses in connection with the private lawsuits.

The second case, from the Eastern District of Pennsylvania, is almost on point. In *B & B Investment Club v. Kleinert's, Inc.*, 472 F.Supp. 787 (E.D.Pa.1979), suit had been brought against a corporation and two of its officers. The corporation settled the suit against it (on unspecified terms). One of the officers (Stephens) settled by paying $35,000, and the other (Brubaker) settled without paying anything. Brubaker claimed indemnification under a Pennsylvania statute that was virtually identical to § 145(c), *id.* at 789 n. 3, as the court noted, *id.* at 791 n. 5. The corporation argued that Brubaker was not "successful on the merits or otherwise," be-

cause his settlement was achieved only as a result of Stephens's $35,000 payment. The court rejected this argument, explaining that "[Brubaker] is entitled to indemnification because *he* made no monetary payment and the case was dismissed with prejudice *as to him." Id.* at 790 (emphasis added). Even though there was evidence that the plaintiffs dismissed their claims against Brubaker only because of Stephens's payment, this payment was irrelevant to the determination of "success":

> That the class plaintiffs at one point in the negotiations sought a cash payment from Brubaker but later settled with him for no monetary consideration does not render Brubaker any less successful than the plaintiff in *Wisener*. Nor is the extent of Brubaker's success affected by Stephens' having paid sufficient consideration to enable Brubaker to negotiate a dismissal with prejudice without making any payment. In short, Brubaker was "successful on the merits or otherwise".....

*Id.* at 791. The same logic applies to our case. "[T]he extent of [Waltuch's] success" is not lessened by Conti's payments, even if it is true (as it stands to reason) that his success was achieved because Conti was willing to pay. Whatever the impetus for the plaintiffs' dismissal of their claims against Waltuch, he still walked away without liability and without making a payment. This constitutes a success that is untarnished by the process that achieved it.

For all of these reasons, we agree with Waltuch that he is entitled to indemnification under § 145(c) for his expenses pertaining to the private lawsuits.

### III

The judgment of the district court is affirmed in part and reversed in part. This case is remanded to the district court so that judgment may be entered in favor of Waltuch on his claim for $1,228,586.67, representing the unreimbursed expenses from the private lawsuits. *See supra* note 1.