Fabricant, Judith, J.
INTRODUCTION
The plaintiffs, Steven Gregorio and William Mahoney, are former officers of defendant Excelergy Corporation. They seek indemnification under Ex-celergy Corporation’s by-laws and under Delaware and Massachusetts statutes for expenses incurred in defending a third-party lawsuit against them that they allege was based on conduct in their positions as officers of the corporation. The plaintiffs claim that defendant Excelergy North America, LLC, is Excelergy’s successor in interest based on its purchasing the assets of the now defunct Excelergy Corporation, and therefore is also obligated to indemnify the plaintiffs.
The parties are before the court on the defendants’ motions to dismiss for failure to state a claim upon which relief may be granted. Excelergy Corporation argues that the plaintiffs are not entitled to indemnification because Excelergy Corporation has not found that they acted in good faith; the plaintiffs were not “successful on the merits or otherwise” in the relevant litigation; and the plaintiffs fail to state viable claims under G.L.cc. 93A, 231A, and 156D. Excelergy North America, LLC agrees that the plaintiffs are not entitled to indemnification and also argues that is not obligated to indemnify the plaintiffs in any event because it is not Excelergy Corporation’s successor and has not assumed any obligation to indemnify the plaintiffs. For the reasons that will be explained, the motions will be allowed in part and denied in part.
BACKGROUND
The plaintiffs’ Second Amended Complaint sets forth the following.
Excelergy Corporation (“EC”) is a Delaware corporation with a principal place of business in Lexington, Massachusetts. Plaintiff Stephen Gregorio served as Chief Financial Officer of EC from July 2000 through October 2004. Plaintiff William Mahoney served as EC’s Chief Executive Officer from November 2000, through August 2004.
EC’s by-laws contain several provisions that address the indemnification of current and former officers of the corporation. Section 1 of Article V states:
Actions other than by or in the Right of the Corporation. The corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative ... by reason of the fact that such person is or was a director, officer, employee or agent of the corporation, . . . against expenses (including attorneys fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation . . .
Section 3 of Article V states:
To the extent that any person described in Section 1 ... of this Article has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in said Sections, or in the defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys’ fees) actually and reasonably incurred by him in connection therewith.
Section 10 of Article V states that “(t]he indemnification and advancement of expenses provided by, or granted pursuant to, this Article V shall continue as to a person who has ceased to be . . . [an] officer.” Finally, Section 10 of Article V states:
the intent of this Article V is to provide for indemnification and advancement of expenses to the fullest extent permitted by Section 145 of the General Corporation Law of Delaware. To the extent that such Section or any successor section may be amended or supplemented from time to time, this Article V shall be amended automatically and construed so as to permit indemnification and advancement of expenses to the fullest extent from time to time permitted by law.
The plaintiffs were named as defendants in a civil action filed on December 20, 2004, in the federal District Court for the District of Massachusetts. See FM Holdings, LLC v. Mahoney, No. 05-CV-11400-MLW (D.Mass.). They allege they were named as defendants in that case “(b]y reason of their prior service as officers of [EC].” The plaintiffs further allege that “[a]t all times relevant to the FM Holdings action, [they] acted in good faith and in the best interests of [EC] and with the full knowledge and express approval of [EC’s] Board of Directors."
On January 26, 2005, the plaintiffs made written demands to EC for indemnification of their legal expenses in the FM Holdings litigation. Counsel for EC sent a response to the plaintiffs dated January 31, 2005. The letter stated that EC was reviewing the requests for indemnification. It further stated:
As you will note from Excelergy’s By-Laws, indemnification is only proper if (among other things) your client met the applicable standard of conduct set forth therein. Excelergy will advise you and your client further once it has made a determination with respect to your client’s request for indemnifications.
On March 14, 2005, EC entered into an agreement with Brinvest North America, LLC (“Brinvest”),[3] in which Brinvest acquired all tangible personal property of EC; all of EC’s intellectual property; all agreements *275 and contracts necessary to continue EC’s business; all relationships with EC customers including software licenses and customer lists; all rights arising out of licensing, distribution, sales and purchase, and other agreements; all accounts and notes receivable; and all letters of credit and performance bonds. The “Excluded Liabilities” provision in the asset purchase agreement did not reference any liability arising from EC’s indemnification obligations under its by-laws. On March 30, 2005, EC’s Board of Directors authorized dissolution of the company. EC filed a Certificate of Dissolution with the Delaware Secretary of State on December 8, 2005.
In May 2005, Brinvest North America, LLC, changed its name to Excelergy North America, LLC (“ENA”). ENA continues to do business under the name “Excelergy” and operates out of the Lexington, Massachusetts facility previously owned and occupied by EC. It maintains all or substantially all aspects of EC’s business including: management, personnel, assets, shareholders, and business operations. ENA also maintains the Web site at www.excelergy.com in which ENA identifies itself as “Excelergy” and offers products developed and sold by EC prior to the asset sale to ENA. The site also contains press releases from 2000 to the present.
In a letter dated November 23,2005, counsel for the plaintiffs again contacted EC and inquired as to the company’s position regarding the indemnification and advancement of expenses from the FM Holdings litigation. Counsel for EC responded in a letter dated November 30, 2005, stating:
Based on the facts to [sic] known to it, Excelergy has determined that Messrs. Gergorio and Mahoney, in connection with their dispute with FM Holdings, LLC, f/k/a Forwardmarket, LLC, currently are not entitled to indemnification under Article V, Sections 1, 2, and 4. Excelergy’s decision at this time is based on Messrs. Gregorio and Mahoney’s failure to meet the applicable standard of conduct to act in good faith and in a manner reasonably believed to be in, or not opposed to, the best interests of Excelergy.
In a December 14, 2005 letter, plaintiffs’ counsel responded by inquiring as to what behavior was considered in making the determination and the manner in which it was made, as well as inquiring about what changes had occurred to EC’s corporate form. Counsel for EC responded that EC’s position had not changed and that EC was prepared to defend its actions.
In a February 13, 2007 letter, plaintiffs’ counsel demanded indemnification from ENA, claiming that ENA, as successor to EC, is obligated to indemnify the plaintiffs for their litigation costs in the FM Holdings action. Counsel for ENA responded on February 26, 2007, denying any obligation to reimburse the plaintiffs because ENA had not assumed any obligations to indemnify the plaintiffs. ENA’s counsel also stated that plaintiffs were, in any event, not entitled to indemnification under EC’s by-laws because there had not been any determination by EC’s Board of Directors or stockholders that the plaintiffs acted in good faith or reasonably in the best interests of the corporation, and there was no court order ordering indemnification.
The plaintiffs commenced this action on June 28, 2007, seeking to compel the defendants to advance and indemnify them for their litigation expenses in the FM Holdings litigation. In December 2007, the parties to the FM Holdings litigation settled that case by means of a confidential Settlement and Release Agreement. Pursuant to that agreement, all the claims asserted in the action were dismissed with prejudice. Thereafter, on February 25, 2008, the plaintiffs in this action filed a Second Amended Complaint, alleging that:
[a]s part of the settlement of the FM Holdings action, Plaintiffs made no payments, had no obligation to make any payments, expressly denied any liability, wrongdoing or responsibility and were wholly released from any claims asserted against them without incurring any obligations.
The complaint goes on to state:
Excelergy’s insurance carrier, National Union Fire Insurance Company of Pittsburgh, PA, voluntarily agreed to make a nuisance value payment of One Hundred Seventy Five Thousand and 00/100 Dollars ($175,000.00). This payment, which was solely the obligation of the insurance carrier and was never an obligation of Mr. Gregorio or Mr. Mahoney, was substantially less than the anticipated costs of further litigating the FM Holdings action through trial, and was a small fraction of the damages sought by FM Holdings, and therefore nothing more than the “nuisance value” of the suit.
The Second Amended Complaint sets forth a total of six counts based on the defendants’ failure to indemnify the plaintiffs: breach of contract (Count I); a claim for declaratory judgment “that Defendants are obligated to indemnify them and pay for legal expenses and costs incurred or to be incurred in defending the FM Holdings action and related litigation” (Count II); breach of the implied covenant of good faith and fair dealing (Count III); violation of G.L.c. 93A, §§2 & 11 (Count IV); indemnification under G.L.c. 156D (Count V); and indemnification under 8 Del. C. §145 (Count VI).
DISCUSSION
1. Standard of Review
The Supreme Judicial Court has recently addressed the standard of review for a motion to dismiss, and adopted the refined language set forth in the United States Supreme Court’s decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), which states: “While a complaint attacked by a... motion to dismiss *276 does not need detailed factual allegations ... a plaintiffs obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino v. Ford Motor Co., No. SJC-10059, 2008 WL 2375179, at *7 (Sup.Jud.Ct. June 13, 2008)., quoting Bell Atl. Corp, 127 S.Ct. 1955 at 1964-65 (internal quotations omitted). At the pleading stage, the plaintiff must present “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect! 1 the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino, 2008 WL 2375179 at *7, quoting Bell Atl. Corp., 127 S.Ct. at 1966 (internal quotations omitted).
2.Choice of Law and the Plaintiffs’ Claim Under G.L.c. 156D
Massachusetts choice of law rules establish that the state of incorporation dictates the governing law in claims involving the internal affairs of a corporation. See Harrison v. Netcentric Corp., 433 Mass. 465, 471 (2001). Both EC and ENA are incorporated in Delaware. Thus, the Delaware Corporations Act, not the Massachusetts Corporations Act, governs the plaintiffs’ indemnification claim, and the defendants’ motion to dismiss as to Count V, claiming indemnification under G.L.c. 156D, must be allowed.
3.ENA’s Successor Liability
“[A] determination of whether a predecessor corporation continues to exist for purposes of successor liability is wholly fact specific.” Milliken v. Duro Textiles, LLC, 451 Mass. 547, 559 (2008). The factors considered by a court in determining if an asset sale should be characterized as a de facto merger so as to warrant successor liability are:
whether (1) there is a continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.
Id. at 557, quoting Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-60 (1997). Similarly, in evaluating whether a purchasing company is a “mere continuation" of the seller such that successor liability should attach, the court considers “at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets.” Milliken, supra, 451 Mass. at 557, quoting McCarthy v. Litton Indus., 410 Mass. 15, 23 (1991). With respect to the factors considered in assessing both de facto mergers and the continuation of a corporation, no single factor is dispositive or necessary. Milliken, supra, 451 Mass. at 558.
Here, the plaintiffs’ complaint sets forth sufficient allegations to sustain its claims against ENA under a successor liability theory. According to the complaint, ENA purchased all of the tangible and intangible assets of EC, including all rights under licenses and contracts. ENA retained EC’s assets, management, and personnel, and also had common shareholders. ENA continues to sell EC’s product line and does business under EC’s trade name “Excelergy” at the same physical location in which EC operated. EC discontinued its operations after the sale, and in the circumstances alleged does not appear to have retained any assets with which it could have continued in its line of business. EC filed for dissolution approximately eight months after the sale, which could reasonably be found to have been “as soon as legally and practically possible.” Cargill Inc., supra, 424 Mass. at 359-60. If proven, these facts could support a finding of successor liability. The failure to allege an express assumption of EC’s potential indemnification obligations is not sufficient to preclude such a finding in light of the other facts alleged. See Milliken, supra, 451 Mass at 558-62 (noting that “the principles of successor liability will be imposed where a corporation ceases all of its ordinary operations, which are assumed by another corporation, and liquidates its assets,” and holding that successor liability was appropriate notwithstanding the continuation of the predecessor corporation in some limited capacity).
4.The Plaintiffs’ Claim for Indemnification
Section 145(a) of the Delaware Corporations Act provides, in relevant part:
(a) A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that the person is or was a director, officer, employee or agent of the corporation ... against expenses (including attorneys fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit or proceeding if the person acted in good faith and in a manner the *277 person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person’s conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation . . .
EC contends that its decision not to indemnify the plaintiffs is subject to judicial review based only on the business judgment rule. The complaint, it contends, fails to state a claim because it alleges no facts to indicate that EC’s decision cannot be “attributed to any'rational business purpose.’’ The cases EC cites for that standard of review do not establish such a rule, and the Court has found no authority that does.[4]
Both sides cite the Second Circuit’s decision in Waltuch v. Conticommodity Services, Inc., 88 F.3d 87 (2nd Cir. 1996), applying Delaware law. The question before the Court in that case was whether a corporation’s by-laws providing for indemnification of officers and directors could dispense with the requirement of §145 (a) that the officer or director have acted “in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the corporation.” Id. at 92-93. The District Court had held that the by-laws could not do so, and that a genuine factual dispute existed as to Waltuch’s good faith; it therefore denied summary judgment and held the case for trial. The parties, seeking to facilitate immediate appeal as to the issue of law, stipulated to entry of judgment against Waltuch. On appeal, the Court affirmed the District Court’s interpretation that the statutory requirement of good faith supersedes any by-law to the contrary. The Court then concluded that “(s]ince Waltuch has agreed to forgo his opportunity to prove at trial that he acted in good faith, he is not entitled to indemnification.” Id. at 95. This decision provides no support for EC’s theory under the business judgment rule; at best, albeit in dictum, it places the burden of proof of good faith on the employee under the by-laws involved in that case.
An unpublished decision of the Delaware Chancery Court, VonFeldt v. Stifel Financial Corp., No. Civ. A 15688, 1999 WL 413393 (Del.Ch. June 11, 1999), addressed an indemnification claim under §145 in circumstances similar to Waltuch. The Chancery Court endorsed the holding of Waltuch under which a corporation’s power to indemnify under §145 (a) is limited by the statutory requirement that the indem-nitee have acted in good faith. Id. at *2. The court then went on to discuss the determination of good faith, under a by-law that provided, in relevant part, “(t]he Corporation shall indemnify [the employee] to the full extent authorized by law.”[5] Id. at *3. The court held that this provision shifted the burden of proof on the issue of the putative indemnitee’s good faith to the corporation, and that the corporation had failed to present any evidence to meet its burden. Id. Here, as in Von Feldt, EC’s by-laws provide that EC shall indemnify its former officers “to the fullest extent permitted by Section 145.” Under the ruling of VonFeldt, this language places the burden of proof of lack of good faith on the defendants.
EC cites the Delaware Supreme Court’s decision in Stifel Financial Corp. v. Cochran, 809 A. 2d 555, 560 (Del. 2002), for the proposition that a putative indem-nitee may bypass the corporation’s determination only by seeking a court order before requesting indemnification from the corporation. That case does not establish any such rule, but merely provides an example of case in which an employee followed that procedure. In both Waltuch and VonFeldt, the employee sued after a denial of indemnification, as these plaintiffs have done. Nothing in those decisions suggests any defect in that procedure. The Court therefore concludes that the plaintiffs’ claim for indemnification under § 145(a) and EC’s by-laws adequately states a claim on which relief may be granted.
Given this conclusion, it is unnecessary to address the plaintiff s theory under 8 Del. C. § 145(c). The Court will comment nonetheless, for the guidance of the parties. Section 145(c) states:
To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys fees) actually and reasonably incurred by such person in connection therewith.
The plaintiffs argue that, although the underlying case was settled on payment of $175,000, they were successful on the merits because they themselves did not make paymentNational Union Fire Insurance Company of Pittsburgh, PA (“National Union”) didand because the amount of the settlement was mere nuisance value in relation to the claims. The Court is not persuaded on either of these theories. The complaint identifies the plaintiffs as the only defendants in the underlying case. It follows that National Union’s payment must have been on their behalf; National Union was not a party, and there was no one else on whose behalf it could have paid. As for the “nuisance value” theory, although some cases have suggested the possibility that a small settlement could constitute success on the merits, see Owens Corning v. Nat’l Union Fire Ins. Co., 257 F.3d 484, 495 n.6 (6th Cir. 2000); VonFeldt, supra, 1999 WL 413393, at *4, no case cited, or of which the Court is aware, has made *278 any such suggestion with respect to a settlement of the magnitude involved here.
5. The Contract Claims
Indemnification of former officers under a corporation’s by-laws is a contractual issue related to the officer’s former employment. See Stifel Fin. Corp., supra, 809 A.2d at 559. Accordingly, the discussion set forth supra regarding the indemnification claims compels the conclusion that the claims for breach of contract and breach of the implied covenant of good faith also state a cognizable claim. The declaratory judgment count adds no substantive claim, but merely seeks an alternative form of relief; that relief may prove superfluous once the other claims are resolved, but the count states a valid claim.
6. The Plaintiffs’ Claim Under Chapter 93A
Claims arising from an employment relationship or the internal governance of a corporation are not in the course of trade or commerce, and are thus beyond the scope of Chapter 93A. Milliken, supra, 451 Mass. at 562-65; Manning v. Zuckerman, 388 Mass. 8, 10-15 (1983); Informix, Inc. v. Rennel, 41 Mass.App.Ct. 161, 163 (1996). The basis of the plaintiffs’ claim is the allegation that the defendants failed to indemnify them for litigation expenses incurred as a result of their former positions as officers of EC, contrary to the terms of their employment and EC’s by-laws. These allegations fall within this category of intra-enterprise and employment related claims that are outside the scope of Chapter 93A. The complaint therefore fails to state a claim under that statute. The defendants’ motions to dismiss are therefore allowed with respect to the plaintiffs’ claim under Chapter 93A.
CONCLUSION AND ORDER
For these reasons, the defendants’ motions to dismiss are DENIED with respect to Count I (breach of contract), Count II (declaratory judgment), Count III (breach of the implied covenant of good faith and fair dealing); and Count VI (indemnification under 8 Del. C. §145), and ALLOWED with respect to Count IV (G.L.c. 93A) and Count v. (indemnification under G.L.c. 156D).

 Brinvest North America, LLC is a Delaware corporation with a principal place of business in Massachusetts.

 Indeed, the decision of the Delaware Supreme Court in Stifel Financial Corp. v. Cochran, 809 A.2d 555, 560 (Del. 2002), expressly rejects an argument that the Court should defer to the authority of the corporation’s board of directors.

 Earlier in the case’s history, the Delaware Supreme Court, interpreting this same provision, stated that “Stifel Financial’s indemnification bylaw is maximally broad, mandating indemnification to the full extent permitted by Delaware law. The bylaw thus requires Stifel Financial to provide indemnification under the circumstances described in 8 Del. C. §145(a), where indemnification is permissive by default.” VonFeldt v. Stifel Fin. Corp., 714 A.2d 79, 81 (Del. 1998).